IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BERNADETTE MARTINEZ : CIVIL ACTION
: v. :
:
SOUTHEASTERN PENNSYLVANIA :
TRANSPORTATION AUTHORITY : NO. 08-5021

**M E M O R A N D U M**

M. Faith Angell December 15, 2009
United States Magistrate Judge

*I. Background*.

Plaintiff originally filed this action against Defendant Southeastern Pennsylvania Transportation Authority [SEPTA] and John Doe in the Court of Common Pleas of Philadelphia County. In her initial complaint Plaintiff alleged liability under state law for injuries sustained on October 26, 2006 at the SEPTA train station at Mascher Street and Tabor Road in Philadelphia, where she was sexually assaulted and robbed by John Doe.

On October 15, 2009, Plaintiff filed an amended complaint in state court, adding two counts - a claim against SEPTA for violation of federally-protected civil rights under a state-created danger theory, and claims for assault and battery and intentional infliction of emotional distress against John Doe.

After the amended complaint was filed, SEPTA removed the action to this federal forum, where it as assigned to the Honorable Norma L. Shapiro.

By Order dated April 14, 2009, Judge Shapiro severed and stayed the state negligence count against SEPTA, and dismissed all claims against John Doe.

On May 6, 2009, the parties consented, with the approval of Judge Shapiro, to have this case referred to me for all further proceedings.

Presently before this Court are two motions of summary judgment filed by SEPTA seeking to dismiss both remaining claims - the federal civil rights count and the state law negligence count.

## *II. Standard of Review*

A motion for summary judgment must be granted when the admissible evidence before the Court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56( c).

"A fact is material when its resolution 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Justofin v. Metropolitan Life Insurance Co.,* 372 F.3d 517, 521 (3d Cir. 2004).

All facts and all reasonable inferences must be drawn in favor of the non-moving party. *Id.*

"'When the non-moving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.' *See Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 329 (3d Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)." *Lawrence v. National Westminster Bank New Jersey,* 98 F.3d 61, 65 (3d Cir. 1996).

The role of the Court, at the summary judgment stage, is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### *III. Factual History*[1]

On October 6, 2006, at approximately 11:00 a.m., Plaintiff was waiting on the platform at the SEPTA train station at Mascher Street and Tabor Road in Philadelphia, intending to take the R8 train into the city.[2] No one else was on the platform. There was a ticket building at the station but it was closed. The platform was accessible to the public without paying anything. There were no security personnel at the station. *Plaintiff's March 31, 2009 Deposition* at pp. 9-12 (Attached as Exhibit "A" to Plaintiff's Response in Opposition to SEPTA's Motion for Summary Judgment on Count II).

Earlier that week, Plaintiff had noticed three devices mounted on light poles at the station which she believed were security cameras. No one ever told her that the devices were security cameras, but Plaintiff thought they were cameras because of "how they looked and where they're positioned and how they're faced." *Id.* at pp. 13-14. The devices were attached to light poles near the tracks and the platform. *Id.* Plaintiff felt "safe" because she thought there were security cameras at the station. She testified that had she known that there were no security cameras at

---

[1] The relevant facts will be considered in the light most favorable to Plaintiff as the non-moving party, and are taken, unless otherwise noted, from Plaintiff's deposition testimony.

[2] This train station is referred to as the "Olney Station." *May 14, 2009 Deposition of Michael Gritsko* at pp. 7-8 (Attached as Exhibit "B" to Plaintiff's Response in Opposition to SEPTA's Motion for Summary Judgment on Count II). Michael Gritsko is the Lieutenant Commanding Officer of SEPTA's Police Region Zone 7, which includes the Olney Station. *Id.*

the Olney Station, she would not have used the train to go to school because "there's no security guard down there," but she would have used the train because she "still had to get down to school." *Id.* at 21-22.

Approximately five minutes after Plaintiff arrived at the station, she noticed a man crossing the tracks from a wooded area near a broken gate. There was a path in that area where people could come in and hang out. *Id.* at pp. 15-16. The man approached Plaintiff on the platform, put a gun to her head, and stole her cell phone and CD player. He then forced Plaintiff to walk along the tracks away from the station back to the wooded area where he sexually assaulted her. After the assault, the man forced Plaintiff to walk further down the tracks away from the Olney station, placing the gun to her head and telling her not to turn around. While she was walking in front of the man, he disappeared. The entire encounter lasted approximately five minutes. *Id.* at pp. 16-18.

That same day, Plaintiff reported the rape to the Philadelphia Police Department. The man who assaulted Plaintiff was never arrested. *Id.* at pp. 19-21.

Plaintiff had lived near the Olney Station her entire life and prior to her sexual assault on October 6, 2006 was not aware of any crimes committed at the Olney Station. According to Plaintiff, "everybody in the neighborhood actually thought it [the Olney Station] was safe." *Id.* at pp. 23-24.

For the period from October 28, 2002 to November 9, 2007, there were fourteen crimes reported by the SEPTA police at the Olney Station which fell within the category of "part one" crimes. A "part one" crime refers to an FBI crimes statistic designation and includes violent crimes and crimes against property. The crimes reported at the Olney Station during that period

included robberies, thefts and recovery of a stolen vehicle. *May 14, 2009 Deposition of Michael Gritsko* at pp. 43-47. *See also* "Gritsko -3" (attached as an exhibit to Michael Gritsko's deposition).

Lieutenant Grisko testified that as the Commanding Officer of the Uniform Patrol Unit of SEPTA Police Region Zone 7, one part of his daily responsibilities is to respond to crimes at SEPTA stations by increasing police presence and/or make apprehensions of suspects. *Id.* at pp. 13-15. SEPTA shares policing responsibilities with the Philadelphia Police Department. The Olney Station falls within the 35th Police District, and is patrolled by both SEPTA Officers and Philadelphia Police Officers. *Id.* at pp. 21-22, 25-26, 53.

Prior to the October 6, 2006 incident, SEPTA police checked the Olney Station, driving by it or through the parking lot. Police presence at this station was not as high as at other stations because there is only one police car in Zone 7, which includes approximately 45 to 50 regional rail stations. Over the fifteen years he served as an officer, "as a good cop," Lieutenant Grisko complained that he needed more vehicles. *Id.* at pp. 15, 30-33.

The single police car in Zone 7 is supplemented by SORT ("Special Operations Response Team"), a different unit of SEPTA with access to more vehicles. The SORT officers supplement the Zone 7 patrols by going to regional rail stations where there have been incidents of recurring problems. *Id.* at pp. 35-36. In Lieutenant Grisko's opinion, the amount of crime at the regional rail stations can be handled by what SEPTA is doing now, and there was nothing different before the October 6, 2006 incident. *Id.* at pp. 38-39.

Lieutenant Grisko first received a report of the October 6, 2006 incident three days later. As a response to the incident, Lieutenant Grisko increased patrols in the area to prevent further similar incidents. He pulled officers from the Broad Street subway line, which is normally a priority, to increase police presence at the Olney Rail Station. *Id.* at pp. 12-17, 20.

Several years after the October 6, 2006 incident, a new station was constructed at the Olney Station. The changes were for ADA accessibility issues and not for security concerns. *Id.* at pp. 48, 50-51.

## *IV. Discussion*

In order to state a cause of action under section 1983, a plaintiff must demonstrate that: (1) the defendant acted under color of state law and (2) the defendant's action deprived the plaintiff of rights secured by the Constitution or federal statutes. *American Mftrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The dispute in this case focuses on the second prong of the analysis.

Plaintiff alleges that SEPTA is liable to her under the state-created danger theory.

While the Due Process Clause of the Fourteenth Amendment does not impose an affirmative obligation on the state to protect its citizens, the Third Circuit has recognized the state-created danger theory which operates as an exception to this general rule. *See Kneipp v. Tedder*, 95 F.3d 1199, 1201 (3d Cir. 1996). Under this theory, "[w]hen the affirmative exercise of state authority either results in a citizen's injury or leaves citizen more vulnerable to injury at the hands of a third party, the government contravenes the substantive due process protections of the Fourteenth Amendment." *Marvel v. Delaware County,* CA No. 07-5054, 2009 WL 1544928, at * 8 (E.D. Pa. June 2, 2009)(quoting *D.N. v. Snyder*, 608 F.Supp.2d 615, 2009 WL 824757, at *4 (W.D. Pa. March 31, 2009)).

In order to establish a state-created danger claim, a plaintiff must prove all of the following elements:

> "(1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed."

*Id.* (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008)). Entry of summary judgment is warranted when the plaintiff fails to present evidence which shows there is a genuine issue of material fact as to each element of her state-created danger claim. *Id.* (quoting *Smith v. School Dist. of Phila.*, Civ. A. No. 07-2080, 2009 WL 667455, at *3 (E.D. Pa. March 10, 2009)).

With regard to the first element, the plaintiff must establish an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm. In addition to the foreseeability component, the plaintiff must also establish that the harm is a "fairly direct" result of the defendant's acts. *See Phillips*, 515 F.3d at 238-239 (3d Cir. 2008). "Although this inquiry is unavoidably fact specific for each individual case, a distinction exists between harm that occurs to an identifiable or discrete individual under the circumstances and harm that occurs to a 'random' individual with no connection to the harm-causing party." *Id.* at p. 239.

Here, Plaintiff alleges that following acts by SEPTA which created a false appearance of supervision: (1) erecting a ticket booth that was unmanned; (2) creating a platform for passengers to wait on that was accessible to the public; (3) creating the appearance of security cameras; (4)

creating a fence with an opening that allowed public access; and (5) establishing a police force but redirecting patrols to high traffic areas and not the Olney Station.  Plaintiff contends that "but for the appearance of security and the hole in the fence, this crime would not have occurred."  *Plaintiff's Response in Opposition to SEPTA's Motion for Summary Judgment on Count II* [Docket Entry No. 24] at pp. 2-3.

Plaintiff seeks to stretch the concepts of foreseeability and causation too far.  There is no evidence that SEPTA was aware of the violent propensities of Plaintiff's attacker, and there is no direct causal connection between the attack and any of the alleged acts by SEPTA.  The acts by SEPTA which are alleged to have created a false sense of security did not precipitate, nor were they the catalyst for, the random sexual attack on Plaintiff "who happened to be in the path of danger."  *See Phillips*, 515 F.3d at 240 (3d Cir. 2008) and *Morse v. Lower Merion School District*, 132 F.3d 902, 908-910 (3d Cir. 1997).

The second element requires the plaintiff to establish that the state actor acted with a degree of culpability that "shocks the conscience."  In situations like the present, where the state actors had time to make "unhurried judgments," the applicable standard is deliberate indifference.  Deliberate indifference might exist without actual knowledge of the risk of harm when the risk is so obvious that it should be known.  *Phillips*, 515 F.3d at 240-241 (3d Cir. 2008).  "[T]he state's actions must evince a willingness to ignore a foreseeable danger or risk.  Of course, the notion of deliberate indifference contemplates a danger that must at least be foreseeable."  *Morse*, 132 F.3d at 910 (3d Cir. 1997).  These factors are not present in the instant

case. SEPTA was not aware of the danger posed by Plaintiff's attacker, nor could they have foreseen it. At most, SEPTA's security decisions amount to negligence. They simply do not rise to the level of a constitutional violation. *Id.* at p. 911 (" . . . merely negligent acts cannot support a claim under the state-created danger theory of §1983.").

The third element, "the relationship requirement" "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." *Id.* at p. 912. Plaintiff alleges a relationship "of customer and servicer." *Plaintiff's Response in Opposition to SEPTA's Motion for Summary Judgment on Count II* at p. 3. Plaintiff has not established a relationship "even remotely similar to such individualized relationships involving personal contact in close temporal proximity to the injury suffered." *Martorano v. City of Philadelphia*, CA No. 09-3998, 2009 WL 3353089, at *3 (E.D. Pa. October 14, 2009)(granting the City's motion to dismiss on plaintiff's substantive due process claim based on a state-created danger theory, where Plaintiff was a passenger in a car whose driver was "joy riding" and crashed in FDR Park causing Plaintiff to sustain severe injuries and it was alleged that the City knew that joy riding frequently occurred in FDR Park and knew that this was likely to cause harm to citizens). *See Morse*, 132 F.3d at 913 n. 12 ("Where the state actor has allegedly created a danger towards the public generally, rather than an individual or group of individuals, holding a state actor liable for the injuries of foreseeable plaintiffs would expand the scope of the state-created danger theory beyond its useful and intended limits.").

The final element, creating an opportunity for harm, addresses whether the state actor has in some way placed the plaintiff in a dangerous position that was foreseeable. *Id.*, at p. 915. "State actors must use their authority to create an opportunity that otherwise would not have

existed for the third-party's crime to occur. [. . . ] The line between action and inaction may not always be clear. However, we have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised in some fashion." *Phillips*, 515 F.3d at pp. 235-236. Establishing an affirmative act is not sufficient, "[w]here the state action is not the 'but for cause' of the plaintiff's harm, the fourth element is not satisfied.'" *Marvel*, 2009 WL 1544928, at *15 (E.D. Pa. June 2, 2009)(quoting *Kaucher v. County of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006)).

Plaintiff has not established that SEPTA's acts which are alleged to have created a false sense of security affirmatively placed her in more danger than had SEPTA not acted at all. Further, Plaintiff has not established that any action by SEPTA was the "but for" cause of her harm. She has not shown that SEPTA either created a risk of danger nor enhanced her risk of danger. *Caissie v. City of Cape May,* 619 F.Supp.2d 110, 125 (D. N.J. 2009)("It is not enough that Plaintiff baldly allege that the officers created an 'opportunity' for [her boyfriend] to attack her. Plaintiff must also show that the City either created a danger or rendered her more vulnerable to danger than had the City not acted at all.").

Taking all evidence submitted by the parties, and all reasonable inferences which may be drawn from it, in the light most favorable to the Plaintiff, I find no genuine issue of material fact that precludes summary judgment on Plaintiff's civil rights claim. The alleged conduct by SEPTA sounds in nothing more than state common-law negligence and simply does not rise to the level of a constitutional violation. Accordingly, I grant Defendant's motion for partial summary judgment on Count II.

In light of the grant of summary judgment on Count II, the only remaining claim is a state negligence claim. I will lift the stay of this count. SEPTA has asked for summary judgment on this count, arguing "it would clearly be economic, convenient and fair for the pendent state law issue to be decided at the same time as the federal one." *Defendant SEPTA's Motion to Vacate Stay of Count I And For Summary Judgment on That Count* [Docket Entry No. 18] at p. 4. According to SEPTA, discovery is complete and the factual record of this case shows that Plaintiff's claim does not fall within any exception to SEPTA's sovereign immunity. *Id.* at p. 11.

In opposing this motion, Plaintiff asserts that the stay imposed by Judge Shapiro "precluded by design Plaintiff's discovery as to the sovereign immunity issue, which, in any event, [as a] unique state law issue is best left for the state court." *Memorandum in Support of Plaintiff's Response In Opposition to Defendant's Motion to Vacate Stay and For Summary Judgment as to Count 1* [Docket Entry No. 25] at p. 1.

I am inclined to follow the general practice of this Court to remand state law claims to that forum when all federal claims have been dismissed. However, to complete the record, the parties are to submit to my chambers, by January 25, 2010, a letter brief stating their position as to whether remand of the now only remaining claim, a state law claim, is appropriate in this case.

BY THE COURT:

S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA
Robert N.C. Nix Federal Building
900 Market Street, Suite 211
Philadelphia, PA    19107

**Chambers of**
**M. FAITH ANGELL**　　　　　　　　　　　P:   (215) 597-6079
United States Magistrate Judge　　　　　　　F:   (215) 580-2165

## *FAX / MAIL COVER SHEET*

**CASE NO.**    08-5021

**TODAY'S DATE**: December 15, 2009　　　　　　**LAW CLERK'S INITIALS**: JJK

**VIA FAX:**

| **NAME** | **FAX NUMBER** |
|---|---|
| 1.  Matthew B. Weisberg, Esq./Isaac F. Slepner, Esq. | 610-690-0880 |
| 2.  Robert M. Waller, Esq. | 215-580-7078 |